**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
PATRICIA A. DADDINO,

|  |  |
|---|---|
|  | **REPORT AND** |
|  | **RECOMMENDATION** |
| *Plaintiff*, | 23-cv-8063 (JMA) (JMW) |

        -against-

SANOFI US SERVICES INC., *formerly known as*
*Sanofi-Aventis U.S. Inc*., and SANOFI-AVENTIS
U.S. LLC,

                 *Defendants*.
-------------------------------------------------------------------X

**WICKS**, Magistrate Judge:

      Plaintiff, Patricia A. Daddino ("Plaintiff") commenced this action against Defendants

Sanofi US Services Inc. and Sanofi-Aventis U.S. LLC (collectively, "Defendants" or "Sanofi"),

manufacturers of the chemotherapy drug docetaxel (Taxotere) (hereafter, "Taxotere"), as part of

the *Taxotere (docetaxel) Products Liability Litigation*, Multi-District Litigation ("MDL") 2740

within the Eastern District of Louisiana (the "MDL Court"), alleging strict products liability,

negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment,

fraud and deceit, extreme and outrageous conduct and/or intentional infliction of emotional

distress, and punitive damages. (ECF Nos. 1, 23.) Specifically, Plaintiff alleges "disfiguring

permanent Alopecia beginning sometime after treatment with Taxotere and continuing to

present." (ECF No. 1.)

      The MDL Court adopted a master and short form pleading process to streamline the

process of evaluating Rule 12 challenges, which restricted plaintiffs to short form complaints

("SFCs") for minimal case-specific allegations. (ECF No. 23.) Now before the Court is

Plaintiff's Motion to Amend her Complaint pursuant to Federal Rule of Civil Procedure 15(a)

(ECF No. 23, 25), which is opposed by Defendants (ECF No. 24). For the following reasons, the undersigned respectfully recommends that Plaintiff's Motion to Amend the Complaint (ECF No. 23) be **DENIED**.[1]

## BACKGROUND

### I.    Factual and Procedural Background

On October 4, 2016, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") created *In re: Taxotere (Docetaxel) Products Liability Litigation*, MDL 2740, in the United States District Court for the Eastern District of Louisiana to coordinate pretrial discovery among thousands of individually-filed product liability actions against manufacturers of the chemotherapy drug Taxotere, including Defendants. (ECF No. 19 at 1.) The MDL is pending before the Honorable Jane T. Milazzo. (*Id.*) The MDL Court required plaintiffs to submit: (i) a Master Complaint, which applied to all plaintiffs, and (ii) an SFC, which was to contain individualized allegations for each plaintiff. (ECF No. 7 at 74–75.)

The Master Complaint set forth the general facts and potential claims plaintiffs asserted against defendants and was incorporated by reference into each plaintiff's individual SFC. *See* ECF No. 1. The SFC additionally allowed plaintiffs to: (i) set forth any plaintiff-specific facts

---

[1] There is disagreement within this Circuit as to whether the denial of a motion to amend is considered dispositive matter.  "Some courts 'have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive.'"  *Thompson v. Spota*, No. 14-CV-2473 (JMA) (AKT), 2015 U.S. Dist. LEXIS 92053, 2015 WL 4389931, at *1 (E.D.N.Y. July 15, 2015) (citing *Tyree v. Zenk*, No. 05-CV-2998, 2009 U.S. Dist. LEXIS 43872, 2009 WL 1456554, at *3 (E.D.N.Y. May 22, 2009)).  Out of an abundance of caution, the undersigned proceeds by Report and Recommendation rather than by order.  *See Domni v. Cnty. of Nassau*, No. 19-CV-00083 (JMA) (LGD), 2022 U.S. Dist. LEXIS 207184, 2022 WL 16950055, at *1 (E.D.N.Y. Nov. 14, 2022) (reviewing *de novo* the denial of a motion to amend "[f]or the avoidance of doubt"); *see also Lashley v. Sposato*, No. 13-CV-6343 (JMA) (SIL), 2016 U.S. Dist. LEXIS 12165, 2016 WL 406351, at *1 n.1 (E.D.N.Y. Feb. 2, 2016) ("[D]enial of leave to amend is a dispositive decision at least in situations where the denial is premised on futility"), *report and recommendation adopted*, Order (Feb. 19, 2016).

that were not alleged within the Master Complaint; (ii) identify which causes of action each plaintiff incorporated by reference from the Master Complaint; and (iii) identify any additional causes of action that were not set forth in the Master Complaint that the individual plaintiff sought to allege. (ECF No. 1; ECF No. 7 at 74–75.)

The MDL plaintiffs filed their original Master Complaint in the MDL on March 31, 2017 and, four months later, filed their First Amended Master Complaint "to name certain Defendants correctly." (ECF No. 7 at 74; ECF No. 6-4 at 133–200.) On the MDL defendants' motion, the MDL Court dismissed the MDL plaintiffs' claims of strict product liability for misrepresentation (Count II) and breach of express warranty (Count VIII), finding the Master Complaint did not identify the representations or warranties that were the subject of these claims. (ECF No. 7 at 74–75.) The MDL court granted all plaintiffs two weeks to add those specified allegations to their SFCs. (ECF No. 6-2 at 120–21.)

The MDL Court, recognizing that plaintiffs had not pleaded fraud with particularly in the Master Complaint, also acknowledged the "limitations" associated with pleading plaintiff-specific, fraud-based allegations within a Master Complaint, and ruled in 2017 that any allegations of fraud must be "perfected" within each individual plaintiff's SFC. (ECF No. 7 at 75.) In September 2018, the MDL Court allowed plaintiffs to file a Second Amended Master Complaint, which was "identical" to the First Amended Master Complaint, but added two defendants. (ECF No. 6-2 at 150; ECF No. 6-4 at 342–411.) As in the First Amended Master Complaint, the Second Amended Master Complaint defined all plaintiffs' injuries as "an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (ECF No. 6-4 at 377.)

In 2019, the MDL plaintiffs requested leave to file a Third Amended Master Complaint

that would redefine their injury by eliminating the six-month timeframe. (ECF No. 6-4 at 1425–29.) Specifically, plaintiffs asked to remove the six-month injury definition and to instead allege that there "is no single definition for Permanent Chemotherapy Induced Alopecia ('PCIA') and the amount of time to establish permanent hair loss varies from patient to patient." (*Id.* at 1426.) The MDL court denied the plaintiffs' motion, finding their requested amendment would prejudice defendants and undo the MDL Court's work:

> If the Court were to allow Plaintiffs to amend at this late stage, this would negate a significant amount of the work that has been done in this MDL. Defendants would undoubtedly want to revise certain expert reports and conduct supplemental depositions, and certain rulings from the Court would be mooted.
>
> It is apparent that the main reason Plaintiffs wish to amend the Long-Form Complaint at this juncture is to save cases that are otherwise subject to dismissal for being filed too late. By redefining the injury and adding allegations of fraudulent concealment, Plaintiffs would not only delay the start of prescription but also require Defendants to defend against the application of *contra non valentem*[2] based on Sanofi's alleged fraudulent concealment. This Court will not allow Plaintiffs to make these unduly belated amendments that would cause serious prejudice to Defendants. Presumably, Plaintiffs made an informed decision to define their injury the way they originally did. The Court will not allow Plaintiffs at this point in the MDL to backtrack on that decision.

(*Id*. at 1427-29.) The Court emphasized that the purpose of the proposed amendment was to attempt to save cases that would otherwise be barred by the statute of limitations, which the Court rejected as a reason to abandon plaintiffs' long-standing injury definition. *Id.* Shortly thereafter, individual plaintiffs attempted to achieve the same result by adopting the new injury definition into their SFCs. (ECF No. 6-4 at 1430-31, 1433.) The MDL Court denied these requests for the same reason it denied plaintiffs' attempts to amend the Master Complaint. (*Id*. at 1433; ECF No. 24-2 at 5):

> The Court will not allow Plaintiffs to avoid the application of prescription simply because their injuries are hard to define. Similarly, Plaintiffs cannot avoid prescription by being evasive in their Short Form Complaints about when their injuries occurred.

---

[2] A *contra non valentem* scenario arises "where the defendant prevented the plaintiff from availing herself of her cause of action." *In re Taxotere (Docetaxel) Prod. Liab. Litig*., 995 F.3d 384, 395 (5th Cir. 2021).

> Both as a general matter and for purposes of prescription, this MDL requires defining Plaintiffs' injury. This Court used a definition that the medical literature has adopted[,] and that Plaintiffs have espoused. The Court will not reconsider its ruling on this.

(*Id.*)

On May 11, 2020, the MDL Court implemented "Short Form Complaint Allegations and Amendments – Statute of Limitations Order," Pretrial Order No. 5 ("PTO 105"), which gave the MDL plaintiffs 180 days to add allegations bearing on the statute of limitations to their SFCs, but it limited any amendments to "particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." (ECF No. 6-2 at 167.) The parties then filed a Stipulation extending the deadline until January 15, 2021. (ECF No. 6-2 at 169.) The Stipulation provide that plaintiffs would not "seek leave to amend SFCs to add or include any allegations that are inconsistent with PTO 105 or this Court's Orders addressing motions to amend SFCs, including any allegations that have been previously disallowed by the Court." (ECF No. 23 at 5.) In exchange for plaintiffs' stipulated agreement, the defendants agreed that if a "defendant seeks dismissal of any case based on a statute of limitations, it agrees that it will not argue waiver based on any plaintiff's refraining from amending her SFC to include allegations inconsistent with PTO 105." (*Id.*)

The parties also agreed that if any plaintiff sought to amend in a manner defendants believed was inconsistent with PTO 105, they would confer and place the case on a call docket "for Plaintiffs to show cause why Plaintiff's proposed allegations should not be stricken." (ECF No. 6-2 at 170.) On May 12, 2023, the MDL Court transferred 81 out of 200 "Wave 1" cases to the appropriate district courts in accordance with 28 U.S.C. § 1404.  (ECF No. 19.) Then, on October 23, 2023, the MDL Court transferred another 573 cases as part of "Wave 2" to the appropriate district courts, including the present case transferred to this District. (ECF No. 7 at 2, 17.) District Judge Milazzo reasoned:

5

The JPML has explained that once common pretrial proceedings and any other pretrial proceedings that the transferee court considers appropriate have been completed in the transferee district, consolidated cases are ready for individual treatment. When the JPML created MDL 2740, it noted that centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary. [T]his Court finds that the purposes behind consolidation have now been served.

The Court has held two bellwether trials and has addressed numerous discovery disputes, dispositive motions, and other pretrial issues involving factual and legal questions common to all cases in this MDL proceeding. No further pretrial motions are pending in these cases, and transfer to the appropriate district courts appears to serve the interests of judicial efficiency.

(ECF No. 7 at 1-2) (internal citations omitted). Judge Milazzo further recognized that as of the date of the transfer, all "deadlines for plaintiffs to amend their individual complaints without leave of court have passed." (ECF No. 7 at 76.)

Here, Plaintiff directly filed her case with the MDL on September 26, 2017. (ECF No. 1.) On October 30, 2023, Plaintiff's case opened in the Eastern District of New York after transfer from MDL 2740 for case-specific fact discovery, case-specific expert discovery, dispositive motion practice, and trial. (ECF No. 8.)[3] Plaintiff alleges that Defendants manufacture Taxotere, a chemotherapy used to treat breast cancer (ECF No. 6-4 at 5-6, 22), and that she was treated with Taxotere from approximately January 28, 2010 through March 11, 2010. (ECF No. 1 at 4.)  As a result of her chemotherapy treatment, Plaintiff has allegedly experienced "disfiguring permanent Alopecia beginning sometime after treatment with Taxotere (Docetaxel) and continuing to present." (ECF No. 1.) Plaintiff asserts claims against Defendants for: (i) Strict Products Liability—Failure to Warn; (ii) Negligence; (iii) Negligent Misrepresentation; (iv) Fraudulent Misrepresentation; (v) Fraudulent Concealment; (vi) Fraud

---

[3] Plaintiff's SFC and the Second Amended Master Complaint remain the operative pleadings in this case. (ECF No. 7 at 75.) *See e.g.*, *In re Acetaminophen - ASD-ADHD Prod. Liab. Litig.*, No. 22CV9052, 2023 WL 3467057, at *1 (S.D.N.Y. May 15, 2023) (on a motion to dismiss, drawing facts from the Plaintiffs' SFCs and the master complaint in the MDL that the SFCs incorporated by reference).

and Deceit; (vii) Extreme and Outrageous Conduct / Intentional Infliction of Emotional Distress; and (viii) Punitive Damages. (ECF Nos. 1 at 4; 1-2 at 1.) Specifically, Plaintiff alleges Defendants and other manufacturers of Taxotere, knew "for years" that Taxotere could cause permanent hair loss, but chose not to warn patients and healthcare providers of the risk of permanent hair loss and instead "hid [the] devastating side effect." (ECF No. 6-4 at 343.)

On November 7, 2023, the undersigned directed the parties to file a joint letter describing the nature and current procedural posture of the case. (Electronic Order dated November 7, 2023.) On November 17, 2023, the parties filed a Joint Status Report (ECF No. 19), outlining the parties' positions on, in relevant part: (i) Claims and Defenses; (ii) Amending the Complaint; and (iii) the Status of Discovery, along with a proposed discovery schedule. (ECF No. 19 at 1-11.) On November 11, 2023, the undersigned implemented a Civil Case Management Plan (ECF No. 20), governing fact discovery, expert discovery, post-discovery motions, and pretrial submissions in the case. The undersigned directed fact discovery to be completed by May 17, 2024, and for Plaintiff to file any motion to amend pleadings by January 17, 2024. (*Id.* at 2.) Plaintiff filed her Motion to Amend the Complaint (ECF No. 23) on January 17, 2024, and Defendants filed their Response in Opposition (ECF No. 24) on January 31, 2024. Plaintiff filed her Reply on February 7, 2024. (ECF No. 25.)

## II.    The Parties' Contentions

### A.    Plaintiff's Motion to Amend

In support of her Motion to Amend, Plaintiff argues that while Defendants "will argue [her] request to amend is delayed, there has never been a case-specific scheduling order or deadline to amend," and, therefore, her request is not unduly delayed. (ECF No. 23 at 3.) Plaintiff reiterates that "at her first opportunity to proceed as single case remanded from the

MDL, Plaintiff seeks to amend her complaint to allege case-specific facts." (*Id.*) She contends the SFC did not invite allegations on any case-specific facts regarding "her knowledge of the link between Taxotere and [her] permanent hair loss injury." (*Id.* at 4.)

Plaintiff specifically argues that PTO 105 "unnecessarily and improperly limited the ability of Plaintiffs to allege case specific facts without conducting the necessary analysis of whether to grant leave under Rule 15." (*Id.* at 5.) *First*, Plaintiff argues that because her Motion to Amend was filed within deadline set by the Case Management and Scheduling Order issued by the undersigned, and therefore is timely. (*Id.*) *Second*, Plaintiff argues her proposed amendments are not made in bad faith or with a dilatory motive, rather, she only seeks to reflect facts that been discovered and that are relevant to her claims and allegations. (*Id.* at 6.)

*Third*, Plaintiff contends the amendments sought would not result in any unfair prejudice to Defendants, because they have not yet been required to file a case-specific answer, and Plaintiff has yet to give her deposition testimony. (*Id.*) Moreover, Plaintiff argues the proposed amended complaint does not give rise to a new cause of action nor inhibit Defendants' ability to prepare a defense in this matter, as Defendants are "well versed in advancing [their] statute-of-limitations defenses, as well as its general and specific causation challenges, in Taxotere cases." (*Id.*) Plaintiff maintains her proposed amendments only seek to clarify factual allegations regarding the alleged injury, "which were previously vague in terms of when such information was known, denied by [Defendants] in [their] master answer, and inconsistent with the discovery and scientific expert testimony in the MDL." (*Id.*)

*Fourth*, Plaintiff argues that the proposed amendments to her Complaint would not be futile. (*Id.* at 7.) Plaintiff maintains the amendments would assist in clarifying factual allegations on important issues before the Court, including those related to statute of limitations. (*Id.*)

Specifically, Plaintiff argues she received multiple drugs as a part of her combination chemotherapy treatments and took long term endocrine therapy, and, therefore, her claims turn upon when her claim accrued under New York's statute of limitations, and factual allegations supported by science and sworn testimony regarding the underlying cause of her injury and the connection between her injury and her use of Taxotere, therefore, are not futile. (*Id.*)[4] Plaintiff argues that any of Defendants' arguments as to futility are premature as granting Plaintiff's motion to amend does not prejudice Defendants' ability to raise its arguments in a Rule 12(b)(6) motion. (*Id.*)

## B.    **Defendants' Response in Opposition**

In opposition to Plaintiff's Motion to Amend, Defendants argue: (i) allowing Plaintiff to amend her injury definition would negate the MDL Court's work; (ii) Plaintiff should not be allowed to replead claims dismissed in the MDL; (iii) amendment should not be permitted under either FRCP 16 or 15; and (iv) allowing amendment would be futile. (ECF No. 24 at 5-15.) *First*, Defendants argue that Plaintiff requests amendment identical to the one the MDL Court denied in 2019 – that is, to remove the definition of her injury of permanent hair loss "as hair loss persisting six months after the completion of chemotherapy[,]" a definition that would render Plaintiff's claim facially time-barred. (*Id.* at 1.) Defendants contend that the MDL Court recognized plaintiffs' attempt to remove the six-month definition "as a naked attempt to game the statute of limitations analysis" and held that plaintiffs could not abandon their injury definition without prejudicing Defendants and undoing the MDL's work. (*Id.*)  Under the law-

---

[4] Plaintiff further contends that amendments pertaining to Defendants' fraudulent acts and/or omissions supports Plaintiff's claims for punitive damages and concealment/tolling/estoppel related to the statute-of-limitations defense. (*Id.*)

of-the-case doctrine, Defendants maintain that this Court should do just as other remand courts have done and leave the MDL Court's ruling intact. (*Id*. at 2.)[5]

*Second*, Defendants argue that Plaintiff's proposed amendments seek to revive a claim for strict products liability for misrepresentation, which was dismissed by the MDL Court, and that the MDL Court's ruling should not be disturbed. Defendants note that after dismissing that same claim as part of the MDL workup, the MDL Court gave individual plaintiffs fourteen days to amend their SFCs to add any particularized allegations underlying their claims, and, although Plaintiff's SFC was on file at that time, she failed to do so. (*Id*. at 11.) Defendants contend that Plaintiff's proposed complaint "simply copies the same allegations that the MDL Court rejected as insufficient in the Master Complaint[,]" and Plaintiff failed to acknowledge that the strict product liability for misrepresentation claim was previously dismissed. (*Id*.) Further, Defendants maintain she does not proffer any reasoning for why the MDL Court's dismissal of the claim was "clearly erroneous or manifestly unjust." (*Id*.)

*Third*, Defendants argue Plaintiff's motion does not explain why she never amended her SFC to add allegations regarding fraud and the statute of limitations, despite being given the

---

[5] Defendants rely on the following remand court decisions: "*Martin v. Sanofi US Services Inc., et al*., 8:23-cv-02559 (M.D. Fla. Jan. 12, 2024) (denying motion for leave to amend the complaint because "the requested amendment would unduly prejudice Defendants and would undermine the rulings already made by the MDL Court," which "already considered and rejected the request to amend to alter the injury definition in 2019"); *Hart v. Sanofi S.A., et al*., 8:23-cv-02525 (M.D. Fla. Jan. 17, 2024) (same); *Mims v. Sanofi-Aventis US LLC*, 23-cv-24723 (N.D. Fla. Jan. 19, 2024), at 3 (finding that the plaintiff's proposed amendments would "unduly prejudice Defendants and would undermine the rulings already made by the MDL Court"); *Jackson v. Sanofi-Aventis U.S. LLC, et al.*, 3:23-cv-00553 (M.D. Tenn. Jan. 29, 2024)*,* at 21 ("Just as the MDL Court found that allowing the MDL plaintiffs to amend the injury definition would prejudice Defendants, this Court also finds that allowing Plaintiffs to amend the injury definition would likewise prejudice Defendants"); *Anderson v. Sanofi-Aventis U.S. LLC*, 23-cv-9043 (C.D. Cal. Jan. 19, 2024), at 4 (finding "no reason to depart from the MDL court's conclusion that the amendment she seeks would be unduly prejudicial to Defendants."); *Ali v. Sanofi-aventis U.S. LLC*, 3:23-CV-02694-JSC, 2023 WL 6390592, at *3 n.1 (N.D. Cal. Sept. 29, 2023) (granting summary judgment and rejecting injury-definition amendment because "the MDL court denied Plaintiffs' request for leave to amend their Long-Form Complaint in exactly this way")" (collectively, the "MDL Remand Court Decisions"). (ECF No. 24. at 11, Fn. 8.)

opportunity to do so by the MDL court. (*Id*. at 2.) Defendants claim that her time to do so has now expired, and amendment should not be permitted under either Rule 15 or Rule 16. (*Id*. at 12.) Defendants contend that Plaintiff seeks to add new allegations in support of her fraud claims and in an attempt to argue her claims were timely filed, just as other Taxotere plaintiffs have attempted post-transfer out of the MDL, however, "[t]o date, all such requests have been rejected, with courts around the country recognizing plaintiffs could not show good cause under Rule 16 and/or amendments were previously allowed but now unreasonably delayed under Rule 15." (*Id*.)[6]

Defendants maintain that use of a Master Complaint and a plaintiff-specific, state-claim specific SFC is standard practice in MDLs, and Plaintiff was already given the opportunity to allege individualized fact and state-specific claims to her SFC. (*Id*. at 14.) Moreover, Defendants have answered the Master Complaint. (*Id*.) Defendant contend that "[i]f all remanded plaintiffs were again permitted to amend their SFCs to assert new theories and allegations, and if [Defendants] were then required to answer each new SFC, as [Plaintiff] seems to suggest," the case management work conducted by the MDL Court would be fruitless.  (*Id*.)

---

[6] Defendants rely on the following MDL Court Remand Decisions: "*Dunn v. Sanofi-Aventis U.S. LLC,* 3:23-cv-00649-ECM-SMD (M.D. Ala. Jan. 26, 2024), at 9 (holding that the Plaintiff engaged in undue delay in filing her motion."); *Jackson*, at 17 ("Here, the Court finds that leave to amend should be denied because Plaintiffs' amendments are unduly delayed."); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-CV-696-ACA, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023) (granting motion for judgment on the pleadings and finding fraud claims insufficiently pled, noting the deadline to amend short form complaints to add particularized fraud allegations had expired); *Mims v. Sanofi-Aventis US LLC,* 23-cv-24723 (N.D. Fla. Jan. 19, 2024), at 3 ("The time for amendment of specific complaints has long passed."); *Smith v. Sanofi U.S. Services Inc., et al.*, 23-22013-Civ-Scola (S.D. Fla. Aug. 1, 2023), Scheduling Order and Order of Referral to Mediation at 1, n. 1 ("Plaintiff has already been afforded the opportunity to amend her complaint within the multidistrict litigation and the deadline set by that court to amend the pleadings has long since passed."); *Anderson*, at 5 (denying the plaintiff's request to amend the pleadings, in part, because she "failed to avail herself of the opportunity to add such allegations years ago, when amendment would have been timely."); *Jackson*, at 15 (holding that "the deadline for the amendments that Plaintiffs seek to make – (1) general case specific facts, (2) exemplary damages, and (3) a discovery date – has passed."). In other cases, the parties have stipulated that the time to amend has passed or the issue was agreed." (*Id*. at 14-15, Fn. 10-11.)

*Finally*, Defendants contend that allowing Plaintiff to amend would be futile. (*Id*. at 2.) Even if her motion were granted, Defendants argue her fraud claims still fail Rule 9(b)'s heightened pleading standard, and her proposed amendments regarding punitive damages are not recognized under New York law. (*Id*. at 2.)[7] Specifically, Defendants argue that in ruling that the plaintiffs' fraud claims needed to be perfected in the SFCs, the MDL Court "inherently recognized that the fraud allegations contained in the Master Complaint did not satisfy Rule 9(b) because they were, by their nature, generic and not specific to any particular plaintiff. . . [and,] [i]f pleaded in an SFC, a plaintiff could add the plaintiff-specific details the law requires." (*Id*. at 15.) However, Defendants argue that Plaintiff never included such allegations in her SFC, and her proposed amendments "do not add any of the detailed, plaintiff-specific information the MDL court recognized should be added in order to plead fraud adequately, but instead merely repeat the same generic allegations found in the Master Complaint." (*Id*.)

Defendants claim Plaintiff's proposed amendments "fail to connect her personal alleged injury to a specific event, statement, or conduct by [Defendants]; to when and where the conduct occurred; to who engaged in the conduct; to whom it was directed; or why it was improper[,]" and "make run-of the-mill failure-to-warn allegations—*i.e.*, that Sanofi generally concealed the dangers of the product from her and the medical community[,]" which, Defendants argue, are general allegations are insufficient to state a claim for fraud under Rule 9(b). (*Id*.)

---

[7] In her proposed complaint, Plaintiff also includes a separate claim for punitive damages. However, Defendants argue that "'[p]unitive damages are an element of a single total claim for damages and a demand for punitive damages does not amount to a separate cause of action under New York law.'" (*Id*. at 16, Fn. 12) (quoting *Bam Bam Entertainment LLC v.* Pagnotta, 75 N.Y.S.3d 804, 811 n.7 (N.Y. Sup. Ct. 2018) (internal quotations omitted). Defendants contend plaintiffs already requested punitive and exemplary damages in the Master Complaint, which was incorporated by Plaintiff in her SFC, and Plaintiff has not otherwise explained why additional allegations should be permitted this late in the litigation. (*Id*.)

C.    **Plaintiff's Reply in Support**

In her Reply, Plaintiff disputes that her proposed amended pleading is the "exact request" that was denied in 2019 by the MDL Court. (ECF No. 25 at 2.) Rather, Plaintiff argues that the proposed amendment addresses "vagueness and inaccurate science surrounding one paragraph in the master pleadings" – specifically, the paragraph pertaining to the injury definition. (*Id*.) The Master Complaint sets forth the injury definition as follows:

> Unlike the temporary and reversible alopecia that ordinarily results from chemotherapy, Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate cause Permanent Chemotherapy Induced Alopecia, which is defined as *an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy*. The Permanent Chemotherapy Induced Alopecia caused by Taxotere, Docefrez, Docetaxel Injection, and Docetaxel Injection Concentrate is not limited to the scalp and can affect hair follicles throughout the body.

(*Id*.) (emphasis added). Plaintiff's proposed amendment to the injury definition provides, in relevant part:

> Unlike the temporary and reversible alopecia that ordinarily results from chemotherapy, Taxotere causes Permanent Chemotherapy Induced Alopecia. There is no single definition for Permanent Chemotherapy Induced Alopecia and the amount of time to establish permanent hair loss varies from patient to patient. The scientific literature has variously referred to Permanent Chemotherapy Induced Alopecia as occurring between six to twenty-four months following chemotherapy treatment.

(*Id*. at 2-3.) Plaintiff contends that the proposed amended allegations do not require anything to be redone in this case, as they are consistent with discovery and deposition testimony, as well as general and specific cause expert reports produced by the parties in the bellwether process. (*Id*. at 3.) Plaintiff maintains that the proposed amended allegations are not made to "redefine" the injury, but rather "to make it consistent with medical science." (*Id*. at 4-5.)

With respect to timeliness, Plaintiff argues the parties' Stipulation to PTO 10 "clearly set forth an agreement that [Defendants] would not argue untimeliness or waiver of amendment if MDL plaintiffs chose not to challenge the limitation of PTO 105 by filing a contested

13

amendment to add allegations beyond what PTO 105 would allow." (*Id*. at 5.) Plaintiff reiterates that PTO 105 allowed for addition of "factual allegations regarding particularized fact individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals[,]" and her additional proposed allegations "both general and case-specific, lay out facts that support both the timeliness of [her] claims and the actions of [Defendants] to conceal from the public its knowledge of the risk and complaints from users of Taxotere about permanent hair loss." (*Id*. at 5-6.)[8]

Plaintiff further argues the proposed amendments are not futile, relying on the MDL Court's denial on record of Defendants' motion for summary judgment on July 29, 2021, in which the MDL Court determined that factual issues remained for the jury to consider – including the causes of alopecia and the reasonableness of the plaintiffs' investigations into their alleged injury and reliance on physician opinion. (ECF No. 25-3 at 2.) Plaintiff contends that the MDL Court reached this decision *despite* the Fifth Circuit's decision in *In re Taxotere (Docetaxel) Prod. Liab. Litig*., 995 F.3d 384 (5th Cir. Apr. 21, 2021). (ECF No. 25 at 6.)

In *In re Taxotere (Docetaxel) Prod. Liab. Litig*, the Fifth Circuit affirmed the district court's decision granting summary judgment in favor of Sanofi, which "accepted the master complaint's definition that hair loss that persists six months after the completion of chemotherapy is permanent" and held plaintiffs' claims were "facially prescribed" and "doctrine of *contra non valentem* did not save Appellants' claims because each Appellant had enough information to begin an inquiry six months after her completion of chemotherapy." *Id*. at 388.

---

[8] Notably, in her Reply, Plaintiff agrees to withdraw her proposed cause of action for strict liability for misrepresentation in her proposed amended complaint. (*Id*. at 5.)

## THE LEGAL CONTEXT FOR MOTIONS TO AMEND GENERALLY

Motions to amend pleadings are governed by Federal Rule of Civil Procedure 15(a). Pursuant to Fed. R. Civ. P. 15(a)(2), which provides that "[t]he court shall freely give leave when justice so requires." Generally, "[u]nless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend." *Adlife Mktg. & Communs Co. v. Best Yet Mkt., Inc*., No. 17-CV-02987 (ADS) (ARL), 2018 WL 4568801, at *1 (E.D.N.Y. Sept. 24, 2018) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

The party opposing the proposed amended pleading has the burden of establishing that amendment would be prejudicial or futile. *Jipeng Du v. Wan Sang Chow*, No. 18-CV-01692 (ADS) (AKT), 2019 WL 3767536, at *4 (E.D.N.Y. Aug. 9, 2019) (internal quotations and citations omitted). The moving party must attach the proposed amended complaint to the motion, as was done here, specifying the new claims and/or parties intended to be added. *See Nabatkhorian v. County of Nassau*, No. 12-CV-1118 (JS) (GRB), 2012 WL 13113646, at *1 (E.D.N.Y. Aug. 9, 2012).

The Second Circuit has clarified the standard to be applied by the District Courts in considering motions for leave to amend dependent upon the timing of the proposed amendment:

> The ability of a plaintiff to amend the complaint is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure which, when read together, set forth three standards for amending pleadings that depend on when the amendment is sought. At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission. After that period ends— either upon expiration of a specified period in a scheduling order or upon expiration of the default period set forth in Rule 15(a)(1)(A)—the plaintiff must move the court for leave to amend, but the court should grant such leave "freely . . . when justice so requires" pursuant to Rule 15(a)(2). This is a "liberal" and "permissive" standard, and the only "grounds on which denial of leave to amend has long been held proper" are upon a showing of "undue delay, bad faith, dilatory motive, [or] futility." The period of "liberal" amendment ends if the

15

district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up [to] a showing of the "good cause" that is required to modify a scheduling order under Rule 16(b)(4).

*Sacerdote v. NYU*, 9 F.4th 95, 115 (2d Cir. 2021); *Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *4 (W.D.N.Y. Nov. 20, 2023) (stating that Rule 15(a)'s standard must be balanced with Rule 16(b)'s good cause standard); *see also* § 3866 Jurisdiction and Power of the Transferee Court, 15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.) ("[T]he transferee judge [in MDL proceedings] should apply the same rules concerning a motion to amend as the court would in an ordinary case on an ordinary docket.").

To this end, under Rule 16(b), "good cause" is required to modify a scheduling order like PTO 105. Fed. R. Civ. P. 16(b)(4); *Sacerdote*, 9 F.4th at 115 ("[T]he period of 'liberal' amendment ends if the district court issues a scheduling order setting a date after which no amendment will be permitted. It is still possible for the plaintiff to amend the complaint after such a deadline, but the plaintiff may do so only up a showing of the 'good cause' that is required to modify a scheduling order under Rule 16(b)(4)"). "[A] finding of 'good cause' depends on the diligence of the moving party." *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 340 (2d Cir. 2000).

## **DISCUSSION**

Plaintiff requests to amend her Complaint following the deadline imposed by PTO 105 to incorporate further factual allegations regarding fraud, statute of limitations, and punitive damages. For the reasons stated further below, the undersigned finds that Plaintiff's proposed amendments: (i) are unduly delayed; (ii) would be prejudicial to Defendants; and (iii) are futile, and therefore respectfully recommends that Plaintiff's motion to amend be denied.

## I.    **Undue Delay**

A court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 1999) (citing *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990)); *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ("Mere delay, [] absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."). Even years after the discovery deadline has passed, courts have nevertheless granted leave if the circumstances so warranted. *See, e.g.*, *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) (affirming district court's decision to grant leave to amend despite four-year delay although plaintiff did not offer a reason for delay but central issue in case changed throughout the litigation); *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-CV-1514 (PAC) (HBP), 2010 WL 445192, at *10 (S.D.N.Y. Feb. 8, 2010) (granting motion to amend despite delay of at least six months and noting that "courts frequently grant leave to amend after much longer periods of delay").

However, "[c]ourts will find that a party has not acted diligently where the proposed amendment is based on information the party knew, or should have known, in advance of the motion deadline" and therefore must provide an explanation for the delay. *N.Y. SMSA Ltd. P'ship v. Town of Hempstead*, No. 10-CV-4997 (AKT), 2013 U.S. Dist. LEXIS 37833, at *12 (E.D.N.Y. Mar. 19, 2013); *see also Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *5 (W.D.N.Y. Nov. 20, 2023) (noting that the burden of showing diligence rests on the party seeking to amend).

Here, the undersigned finds Plaintiff unduly delayed in the bringing of the instant motion to amend her SFC. Plaintiff contends the SFC did not invite allegations on any case-specific facts regarding "her knowledge of the link between Taxotere and [her] permanent hair loss injury" (ECF No. 23 at 4), and specifically argues that PTO 105 "unnecessarily and improperly limited the ability of Plaintiffs to allege case specific facts without conducting the necessary analysis of whether to grant leave under Rule 15" (*id*. at 5), however, Plaintiff "failed to avail herself of the opportunity to add such allegations years ago, when amendment would have been timely." *Anderson*, at 5.

In May 2020, PTO 105 permitted plaintiffs 180 days "to amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals" (ECF No. 6-2 at 167), which was subsequently extended until January 15 2021, with a further agreement that "[n]o further requests for extension shall be permitted unless by consent of all parties or for good cause shown by an individual Plaintiff to justify an extension in their specific case." (ECF No. 6-2 at 169.) The "case-specific" allegations that Plaintiff seeks to allege in her proposed amended complaint primarily involve her treatment in 2010 and her conversations with her physicians shortly thereafter. *See* ECF No. 23-1 at 51, "I. Plaintiff Specific Factual Allegations," ¶¶ 156-163. These are precisely the kind of facts contemplated by PTO 105 (ECF No. 6-2 at 167), and, therefore, Plaintiff was required to allege these facts by January 15, 2021, and has not otherwise presented good cause for further extension.

Indeed, "[n]one of the Plaintiff-specific facts she now seeks to add appear to be newly discovered—or even the product of discovery rather than Plaintiff's own experience. Plaintiff does not adequately explain why she failed to amend her [SFC] to add these allegations when

18

she was given the opportunity in May 2020, nor why she should be permitted to do so now, years after the deadline set by the MDL [C]ourt." *Anderson*, at 5; *see also Johnson v. Barnett Outdoors, LLC*, No. 21-CV-6311 (MJP), 2023 U.S. Dist. LEXIS 208011, at *5-8 (W.D.N.Y. Nov. 20, 2023) (emphasis in original) (denying plaintiff's motion to amend partially because he failed to explain the new information prompting his motion and why "he can *only now* add to his complaint" and finding he did not act diligently since he "knew or should have known" of the information for his proposed amendments "long ago").

As Plaintiff "has failed to amend her complaint in the six years this case has been pending with no justification beyond the difficulty of working within working within a text box and pursuant to the MDL Court's orders," the undersigned finds Plaintiff engaged in undue delay in filing her motion. *Dunn,* at 9. Such a finding is consistent with several MDL Court Remand Decisions. *See e.g*., *Jackson,* at 6 (denying motions to amend which sought to "allege case specific facts and exemplary damages" and to "set forth when [each Plaintiff] discovered the link between her injury of permanent hair loss and her use of Taxotere" where plaintiffs "offer[ed] no rationale to explain why they could not have amended their complaints at an earlier point in time to include these allegations about a discovery they made either before or shortly after they each filed their [SFCs]."); *Mims*, at 3 (same); *Smith*, Scheduling Order and Order of Referral to Mediation at 1, n. 1.[9]

## II.    Undue Prejudice

Prejudice to the nonmoving party is the most important factor in determining whether to grant a leave to amend and is often the "most frequent reason for denying leave to amend." *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008).  However, it is only *undue* prejudice

---

[9] The undersigned notes that Plaintiff does not cite any contrary MDL Remand Court Decisions or related case law. *See generally*, ECF Nos. 23, 25.

that would justify denial of a plaintiff's leave to amend.  *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016).  "With respect to 'undue prejudice,' courts consider whether amendment would: '(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.'" *Alicea v. City of New York*, No. 1:16-CV-07347 (JLR), 2023 WL 3724131, at *3 (S.D.N.Y. May 30, 2023) (quoting *Block v. First Blood Assocs*., 988 F.2d 344, 350 (2d Cir. 1993)). Notably, courts have found that "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice."  *Evans v. Syracuse City Sch. Dist*., 704 F.2d 44, 47 (2d Cir. 1983).

Here, all considerations counsel toward a finding of prejudice.  Plaintiff's proposed amendment, as in the other MDL Remand Court Decisions, seeks to: "provide case specific facts in support of Plaintiff's claims in compliance with Fed. R. Civ. P. 8, clarify an important issue in this case – when plaintiff knew of the link between her use of Taxotere and her injury of permanent hair loss, allow Plaintiff to plead claims and allegations specific to the underlying substantive law, and provide a reasonable showing that Plaintiff may proceed with her punitive damages claim." *Mims*, at 3; *see generally* ECF No. 23-1. The MDL Remand Court Decisions specifically noted that "none of these amendments [are] permitted by prior orders" issued by the MDL Court, "the time for amendment of specific complaints has long passed[,]" and "allowing [plaintiffs] to amend [their] complaint at this late date" (*i.e.*, in 2024), would "unduly prejudice Defendants and would undermine the rulings already made by the MDL Court." *Id*; *Martin*, at ECF No. 33; *Hart*, at ECF No. 39 ("[T]he requested amendment would unduly prejudice

Defendants and would undermine the rulings already made by the MDL Court."); *Jackson*, at 19 (same).

Particularly problematic is Plaintiff's request to remove the six-month injury definition and to instead allege that there "is no single definition for PCIA and the amount of time to establish permanent hair loss varies from patient to patient." (ECF No. 25 at 2-3.) As previously recognized by the MDL Court and the MDL Remand Court Decisions, such an amendment would require Defendants "to expend significant additional resources to conduct discovery and prepare for trial" and "significantly delay the resolution of the dispute[:]"

> [A]mend[ment] at this late stage would negate a significant amount of the work that has been done in this MDL. Defendants would undoubtedly want to revise certain expert reports and conduct supplemental depositions, and certain rulings from the Court would be mooted. By redefining the injury and adding allegations of fraudulent concealment, Plaintiffs would not only delay the start of prescription but also require Defendants to defend against the application of *contra non valentem* based on Sanofi's alleged fraudulent concealment. This Court will not allow Plaintiffs to make these unduly belated amendments that would cause serious prejudice to Defendants.

*Block*, 988 F.2d at 350; ECF No. 6-4 at 1428; *see also Ali*, No. 3:23-CV-02694-JSC, 2023 WL 6390592, at *3, fn. 1 (denying plaintiff's request at oral argument to amend the Master Complaint so Permanent Chemotherapy Induced Alopecia is no longer defined as occurring six months after the end of chemotherapy, and noting that "in 2019, the MDL court denied Plaintiffs' request for leave to amend their Long-Form Complaint in exactly this way."); *Jackson*, at 21 (holding that "allowing Plaintiffs to amend the injury definition would prejudice Defendants[,] as "the amendment would require Defendants to expend significant additional resources to conduct discovery and prepare for trial."); *Anderson*, at 6 ("[T]he proposed amended complaint would unduly prejudice Defendants by changing the definition of Plaintiff's injury years into this litigation."). Accordingly, because Plaintiff's proposed amended seeks to significantly alter the facts of the case, delay its resolution, and undermine the MDL Court's

previous rulings, the undersigned finds Plaintiff's proposed amendments would be prejudicial to Defendants. *Cf. Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 232 F.R.D. 169, 173 (S.D.N.Y. 2004) (finding that proposed amendments will not require "substantial additional" discovery since the new claims were premised on essentially the same facts as the original claim).

## III.   Futility

"One appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir. 2002); *see also In re Curaleaf Holdings, Inc. Sec. Litig.,* 519 F. Supp. 3d 99, 111 (E.D.N.Y. Feb. 15, 2021) ("[A] court need not grant leave to amend if amendment would be futile."). An amendment is futile if the proposed claim could not withstand a motion to dismiss under Rule 12(b)(6). *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland PLC*, 783 F.3d 383, 389 (2d Cir. 2015). The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.

District courts are to first "identify [ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a [d]efendant has acted unlawfully." *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).  The Court looks to the claims below with this framework in mind.

### A.    Statute of Limitations

*Preliminarily,* both parties agree that New York law applies to the dispute. (ECF Nos. 23-25.) New York applies a three-year statute of limitations to personal injury and strict liability actions, *see* CPLR § 214, and a six-year statute of limitations to actions based on fraud, *see* CPLR § 213. *Prohaska v. Sofamor, S.N.C.*, 138 F. Supp. 2d 422, 429 (W.D.N.Y. 2001). Specifically, "[c]laims of fraud must be brought within two years of the time the plaintiff discovered or could have discovered the fraud, or within six years of the time the fraud was committed, whichever is later." *Id*. at 433–34 (citing *Netzer v. Continuity Graphic Associates, Inc.,* 963 F.Supp. 1308 (S.D.N.Y.1997)).

"However, it is well settled that the statute of limitations for fraud is only applicable where there would be no injury but for the fraud. Where allegations of fraud are only incidental to another cause of action, fraud statute of limitations may not be invoked." *Id*. (citing *New York Seven–Up Bottling Co., Inc. v. Dow Chemical Co.*, 466 N.Y.S.2d 478 (N.Y. App. Div 2d Dep't 1983)). Here, Plaintiff alleges personal injury (*i.e.*, hair loss) arising from her use of Taxotere. *See* generally ECF No. 1. Her "fraudulent misrepresentation claim is incidental to her personal injury claim. The fraud statute of limitations does not apply here." *Id*.; *see also Larkins v. Glaxo Wellcome, Inc.*, 1999 WL 360204 at *10 (E.D.N.Y. May 20, 1999) (holding a failure to warn claim is governed by the three-year statute of limitations). Similarly, "[t]he three-year period is computed from the date of discovery of the *injury* by the plaintiff or from the date when through

the exercise of reasonable diligence such *injury* should have been discovered by the plaintiff, whichever is earlier." *Id.* at \*5 (emphasis added).

Notably, Plaintiff "need not have known [her alleged] condition was caused by [Taxotere]." *Id*. at \*7; *see also Matter of New York Cnty. DES Litig.*, 678 N.E.2d 474, 478 (N.Y. 1997) (holding "'discovery of the injury' was intended to mean discovery of the condition on which the claim was based and nothing more."). The Master Complaint defines PCIA as "*an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy*" (ECF No. 25 at 2) (emphasis added), and Plaintiff's proposed amendment describes PCIA "as occurring between six to twenty-four months following chemotherapy treatment." (*Id*. at 2-3.) Plaintiff alleges she received Taxotere from January to March of 2010 as part of her breast cancer treatment. (ECF No. 1 at 4.) Accordingly, applying Plaintiff's injury definition, under New York law, Plaintiff's claim would have accrued no later than March 2012, when she *should* have discovered her injury, and become time barred as of March 2015. *See e.g., Rouviere v. Howmedica Osteonics Corp.*, 645 F. Supp. 3d 157, 172 (S.D.N.Y. 2022); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d at 390. Therefore, because Plaintiff did not commence the instant action until 2017, her claims are time-barred and could not withstand a motion to dismiss. *See In re Bennett Funding Grp., Inc. Sec. Litig.*, 194 F.R.D. 98, 100 (S.D.N.Y. 2000) (amendment would be futile because those claims not currently before the Court are clearly barred by the applicable statute of limitations).[10]

---

[10] Plaintiff asserts that the applicable statute of limitations is tolled under the doctrine of equitable tolling. (ECF No. 23-1 at 53.) "The doctrine of equitable tolling applies where defendant's fraudulent conduct results in Plaintiff's lack of knowledge of a cause of action" and provides that the "statute of limitations does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice." *Jackson v. Eddy's LI RV Ctr., Inc*., 845 F. Supp. 2d 523, 533 (E.D.N.Y. 2012) (internal citations omitted). "To take advantage of tolling, Plaintiff must be able to show that Defendant wrongfully concealed its actions, such that Plaintiff was unable,

B.    **Fraud**

Plaintiff's proposed amendments to her fraud claims otherwise fail on the merits. To establish fraud under New York law, the plaintiff must show: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Barnett v. Countrywide Bank*, FSB, 60 F. Supp. 3d 379, 389–90 (E.D.N.Y. 2014). "A fraudulent concealment claim shares these same elements with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information." *Woods v. Maytag Co*., 807 F.Supp.2d 112, 119 (E.D.N.Y.2011). Similarly, to establish a fraudulent inducement claim, a plaintiff must prove "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001); *Wild Bunch, SA v. Vendian Ent., LLC*, No. 17 CIV. 1383, 2018 WL 1365690, at *3 (S.D.N.Y. Feb. 26, 2018).

---

despite due diligence, to discover facts that would allow him to bring his claim in a timely manner, or that defendant's actions induced Plaintiff to refrain from commencing a timely action." *Id*. However, equitable tolling is predicated only upon a showing of fraudulent concealment, which, for the reasons stated further below (*infra*, II.B), the undersigned finds Plaintiff failed to adequately plead. *See e.g.*, *Wolf v. Wagner Spray Tech Corp*., 715 F. Supp. 504, 508 (S.D.N.Y. 1989) ("Proof of fraudulent concealment creates an equitable tolling of the statute of limitations and the burden rests upon the party pleading fraudulent concealment."); *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-CV-696-ACA, 2023 WL 7115575, at *3 (N.D. Ala. Oct. 27, 2023) (the claim of fraudulent concealment must itself be properly pleaded to toll the statute of limitations for products claims). Even if the Court were to find Plaintiff's fraudulent concealment claims could withstand a motion to dismiss, the undersigned finds that Plaintiff has nevertheless failed to adequately plead due diligence. *See e.g.*, *In re Taxotere (Docetaxel) Prod. Liab. Litig*., 995 F.3d 384, 394 (5th Cir. 2021) ("A reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia. Appellants made no inquiry, and they are charged with knowledge of all that a reasonable inquiry would have revealed.")

Notably, fraud claims are subject to FRCP Rule 9(b), "requir[ing] plaintiffs to 'state with particularity the circumstances constituting fraud or mistake.'" *In re Piedmont Lithium Inc. Securities Litigation*, No. 21CV4161OEMPK, 2024 WL 197751, at *3 (E.D.N.Y. Jan. 18, 2024) (quoting Fed. R. Civ. P. 9(b)); *see also Goldman v. Belden*, 754 F.2d 1059, 1069–70 (2d Cir. 1985) (holding a plaintiff adequately pleaded fraud under Rule 9(b) where the "Complaint adequately specified the statements it claimed were false or deceptively incomplete; it gave particulars as to the respect in which plaintiff contended the statements were fraudulent; it detailed the time and place at which the statements were made; and it identified the defendants charged with having made those statements, either directly or as controlling persons or aiders and abettors.").

Plaintiff's proposed amendments do not add any of the detailed, plaintiff-specific information the MDL court recognized should be added in order to plead fraud adequately (*see* ECF No. 7 at 75), but rather "merely repeat[s] the same generic allegations found in the Master Complaint." *See* ECF No. 24 at 15 (citing ECF Nos. 23-1, 6-4 at 389–405). Specifically, Plaintiff's proposed "Plaintiff Specific Factual Allegations" allege the following:

- 156. Plaintiff, Patricia Daddino, received Taxotere from January to March of 2010 as part of her breast cancer treatment.

- 157. Following competition of her combination therapy with Taxotere, Ms. Daddino received Carboplatin.

- 158. Prior to undergoing chemotherapy treatments with Taxotere, Ms. Daddino was never informed that Taxotere carried a risk of permanent hair loss.

- 159. Had Ms. Daddino been made aware of the risk of permanent hair loss associated with Taxotere, she would have asked for a different treatment option. However, since Sanofi concealed the fact that Taxotere causes permanent hair loss from Ms. Daddino and her treating physician, Ms. Daddino agreed to undergo treatment with Taxotere under the misunderstanding that hair loss from chemotherapy would be temporary in nature.

- 160. Following her combination chemotherapy treatment, Ms. Daddino acted reasonably in relying on her doctors for her chemotherapy follow-up care, and no doctor in her numerous visits between her chemotherapy and 2016 told her that she had Permanent Chemotherapy Induced Alopecia from her use of Taxotere.

- 161. During the same time period, Sanofi was actively scrubbing social media, as discussed herein, of any comments pertaining to women reporting permanent hair loss with the use of Taxotere.

- 164. Plaintiff could not, by the exercise of reasonable diligence, have discovered that her usage of Taxotere resulted in her injuries. In fact, Defendants have yet to acknowledge that Taxotere causes permanent hair loss or that Ms. Daddino has permanent hair loss.

- 166. Additionally, Plaintiff was prevented from discovering this information at an earlier date because: (1) Defendants misrepresented to the public and the medical profession that Taxotere is associated only with the ordinary type of chemotherapy induced hair loss that is temporary or reversible in nature; (2) Defendants failed to disclose to the public and the medical profession their knowledge of the risk that Taxotere permanently prevents hair regrowth; and (3) Defendants fraudulently concealed facts and information that could have led Plaintiff to discover the liability of the Defendants.

(ECF No. 23-1 at 53-54.)

Plaintiff's proposed amendments "fail to connect her personal alleged injury to a specific event, statement, or conduct by Sanofi; to when and where the conduct occurred; to who engaged in the conduct; to whom it was directed; or why it was improper" and "make run-of the-mill failure-to-warn allegations—*i.e.*, that Sanofi generally concealed the dangers of the product from her and the medical community . . . [which] are insufficient to state a claim for fraud under Rule 9(b)." ECF No. 24 at 15. With respect to this point, an MDL Remand Court Decision, *Maxwell v. Sanofi-Aventis U.S. LLC*, No. 2:23-CV-696-ACA, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023) ("*Maxwell*") is illustrative.

In *Maxwell*, the plaintiff brought claims against Sanofi for strict products liability – failure to warn, negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, fraud and deceit, alleging permanent hair loss resulting from her use of

27

Taxotere in 2010. *Id.* Specifically, the plaintiff contended: (i) that her experience is not unique, (ii) it is "a now well-documented side effect" of Taxotere "that the[ ] drug[ ] cause[s] permanent hair loss[,]" (iii) Sanofi failed to warn patients and healthcare providers that Taxotere could cause permanent hair loss, and (iv) Sanofi concealed this side effect from the public. *Id.* Sanofi moved to dismiss the plaintiff's fraud claims, arguing the plaintiff failed to plead them with the particularity required by Rule 9(b). *Id.* The Court agreed:

> When the judicial panel presiding over the multidistrict litigation remanded this case, the panel advised this court that the panel had directed all plaintiffs to amend their short-form complaints to include plaintiff-specific allegations for the fraud claims. The deadline to plead those allegations has expired, and Ms. Maxwell did not amend her short form complaint. Accordingly, the only allegations particular to Ms. Maxwell are: (1) she used Taxotere from May 2010 to June 2010; (2) the Taxotere was administered to her in Alabama; and (3) her hair loss and thinning became permeant in December 2010.
>
> Because Ms. Maxwell did not amend her short form complaint to include allegations that are specific to her, there are no allegations regarding how Defendants' statements misled her. Although the master operative complaint contains general allegations regarding Defendants' conduct, Ms. Maxwell cannot satisfy Rule 9(b)'s requirements with general allegations. Accordingly, Ms. Maxwell has not pleaded her fraud claims in accordance with Rule 9(b)[.]

*Id.* (internal citations omitted); *see also Ali*, No. 3:23-CV-02694-JSC, 2023 WL 6390592, at *6 (internal citations omitted) (holding plaintiff failed to show fraudulent concealment where she claimed Sanofi was not forthcoming with the link between PCIA and Taxotere and Sanofi otherwise failed to warn her of Taxotere's potential impact on alopecia because plaintiff failed to demonstrate "active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed," which "prevented the plaintiff from suing in time.").

As in *Maxwell*, Plaintiff's proposed fraud allegations are "generic and not specific" to Plaintiff, and, therefore, the undersigned finds they would not withstand a motion to dismiss under the heightened 9(b) pleading standard. (ECF No. 24 at 15.) *See e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 43 F. Supp. 3d 369, 378–79 (S.D.N.Y. 2014), *aff'd sub nom.*

*Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122 (2d Cir. 2016) (denying Plaintiff's motion for leave to amend where plaintiff had not identified any new facts or allegations that would permit survival of his claim or how an amended complaint may differ from his original complaint). Accordingly, the undersigned finds the proposed amendments would be futile as they would not survive a motion to dismiss, and additionally recommends denial of Plaintiff's Motion to Amend on futility grounds. *See e.g., In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 104 (2d Cir. 2008) (collecting cases) ("Repleading could not avoid the application of the government contractor defense and, therefore, remand to permit the amendment would be futile"); *Sinicropi v. Nassau County*, 601 F.2d 60, 62 (2d Cir.1979) (finding the proposed amendment would have been barred by *res judicata* ), *cert. denied*, 444 U.S. 983, 100 S.Ct. 488, 62 L.Ed.2d 411 (1979).[11]

## CONCLUSION

For the reasons stated herein, the undersigned respectfully recommends that Plaintiff's Motion to Amend the Complaint (ECF No. 23) be **DENIED**.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the

---

[11] Plaintiff additionally proposed to amend her complaint to include a separate cause of action for punitive damages. *See* ECF No 23-1 at 76, "Eight Claim for Relief (Punitive Damages – Against all Defendants)." However, the MDL plaintiffs already requested punitive and exemplary damages in the Master Complaint, which was incorporated by Plaintiff in her SFC, and it is well settled that "there is no separate cause of action in New York for punitive damages" otherwise. *See Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (citing *Paisley v. Coin Device Corp.*, 773 N.Y.S.2d 582, 583 (N.Y. App. Div. 2d Dep't 2004) (holding Plaintiff's third cause of action for punitive damages was properly dismissed). Therefore, the undersigned finds Plaintiff's proposed amendment to add a separate cause of action for punitive damages claim would also be futile.

Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
      March 18, 2024

S O  O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge